IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KRISTA W.,<br><br>               Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER<br><br>Case No. 2:17-cv-474 BCW<br><br><br><br>Magistrate Judge Brooke Wells |

This case is before the undersigned following the parties consent under Federal Rule of Civil Procedure 73.[1] Plaintiff Krista W[2] alleges disability beginning on October 1, 2010[3] due to interstitial cystitis,[4] fibromyalgia, pain and fatigue.[5] Following her first hearing on March 13, 2013, the Administrative Law Judge (ALJ) rejected her claims and the Appeals Council remanded directing the ALJ to obtain updated evidence regarding Plaintiff's bladder and kidney issues, further evaluate her subjective complaints and consider her maximum residual functional capacity (RFC), obtain supplemental evidence from a vocational expert, consider new evidence, give Ms. W a new hearing and issue a new decision.

---

[1] ECF No. 20.

[2] Based on privacy concerns regarding sensitive personal information the court does not use Plaintiff's last name. Privacy concerns are a part of many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037.

[3] Tr. 355.

[4] Interstitial cystitis (IC) is a condition that causes discomfort or pain in the bladder and a need to urinate frequently and urgently. . . The symptoms vary from person to person. Some people may have pain without urgency or frequency. Others have urgency and frequency without pain. . . The cause of IC isn't known. . . There is no cure for IC, but treatments can help most people feel better." U.S. Nat'l Library of Medicine, MedlinePlus, Interstitial Cystitis, available at https://medlineplus.gov/interstitialcystitis.html

[5] Tr 383, 387.

Following an additional hearing held in September 2015, the ALJ issued a decision

finding Plaintiff capable of performing her past work as a medical receptionist, order clerk and

telephone clerk. Thus she was not disabled. This appeal followed. The court heard argument on

Plaintiff's appeal and having further considered the relevant case law and record, affirms the

decision of the Commissioner.

## BACKGROUND[6]

Plaintiff applied for disability insurance benefits in 2011 alleging disability on October 1,

2010.[7] She alleges disability due to interstitial cystitis,[8] fibromyalgia, pain and fatigue.[9] Ms. W

completed two years of college and has past relevant work as a medical receptionist, order clerk

and telephone clerk.[10]

The ALJ followed the standard five-step sequential evaluation process for disability

claims.[11] The ALJ found Plaintiff had the severe impairments of fibromyalgia, disorders of the

joints, obesity, interstitial cystitis and a history of renal stones.[12] The ALJ determined Ms. W

had the RFC to perform light work with some limitations including avoiding certain hazards such

as unprotected heights, machinery and dangerous work areas.[13] The analysis then proceeded to

step four where the ALJ found Ms. Williams capable of performing her past work as a medical

receptionist, order clerk and telephone clerk. Thus she was not disabled.

---

[6] The parties fully set forth the background of this case, including the extensive medical history, in their memoranda. The court does not repeat this background in full detail. The reader desiring a more extensive history is directed to the record and briefing of the parties.

[7] Tr. 355.

[8] *See* fn. 4 *supra*.

[9] Tr 383,387.

[10] Tr. 47, 375, 462.

[11] *See* 20 C.F. R. § 404.1520(a)(4); *Fisher-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (summarizing the five step process).

[12] Tr. 26.

[13] Tr. 29.

**STANDARD OF REVIEW**

Because the Appeals Council denied the claimant's requested review the ALJ's decision is considered the Commissioner's final decision for purposes of this appeal.[14] The court reviews the ALJ's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record.[15] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."[17] In considering claimant's appeal the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."[18]

**DISCUSSION**

On appeal Plaintiff raises two issues. First, the ALJ erred by failing to properly incorporate into the RFC all the limitations stemming from Plaintiff's interstitial cystitis (IC), which was found to be a severe impairment. Second, the ALJ erred by failing to properly evaluate the opinion of Plaintiff's treating physician consistent with the regulations and Tenth Circuit precedent.

I.      The RFC and limitations from Plaintiff's IC

Plaintiff argues the ALJ failed to properly account for the limitations created by IC, an impairment found to be severe. In particular, the ALJ did not account for the "significant amount of time Plaintiff would miss from work in order to obtain the only possible treatment for

---

[14] *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003); 20 C.F.R. § 404.981.

[15] *See Doyal*, 331 F.3d at 760; *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

[16] *Doyal* 331 F.3d at 760.

[17] *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

[18] *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

her impairment."[19] Plaintiff underwent a treatment called dimethyl sulfoxide (DMSO) for her IC. Plaintiff would have "severe symptomology in the days following DMSO treatments" which were not accounted for in the RFC. This was error, according to Ms. W, and it necessitates a remand.

The ALJ noted Ms. W's DMSO treatment history in the decision. For example, in July 2011 Plaintiff told Dr. Stockdale, her primary treating physician for bladder pain, that her bladder was better with DMSO treatment.[20] Plaintiff eventually stopped DMSO treatment for six months and reported in April 2013 that her symptoms, such as bladder pain, frequent urination and an inability to sit, become worse.[21] In June 2013 she had another DMSO treatment, along with a treatment for kidney stones, and those treatments provided some relief. In 2015 Ms. W requested and received DMSO treatments.[22] The ALJ also noted the inconsistencies in side effects. In April 2013 Ms. W reported her "DSMO treatments bothered her for one week after, but she did not indicate that her symptoms were so severe as to prevent all work activity."[23] In June 2013 Ms. W "did not mention DMSO side effects or complications."[24] Later, in 2015, Plaintiff's DMSO treatments helped control her symptoms "and no side effects were reported that would prevent sustained work activity."[25] Based on these statements it is clear to the court that the ALJ considered Plaintiff's DMSO treatments and the side effects such treatments created.

---

[19] Pla's brief p. 4.

[20] Tr. 32.

[21] Tr. 32.

[22] Tr. 32.

[23] Tr. 32.

[24] Tr. 32.

[25] Tr. 32.

The regulations provide that "Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record."[26] Although the ALJ found Plaintiff's IC severe, the variations in side effects and complications in the record from DMSO treatments supports the ALJ's decision to not include side effects and complications from the treatments in the RFC. In short, the record contains support for both the idea that Plaintiff has limitations arising from the side effects of treatment, and the idea that they are not as severe as she alleges. The ALJ is entitled to resolve such evidentiary conflicts.[27] The court is not persuaded by Plaintiff's argument.

II. Medical opinion evidence

Ms. W next argues the ALJ erred by failing to evaluate the opinion of her treating physicians consistent with the regulations and Tenth Circuit precedent. An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight [she] assigns to such opinions."[28] When assessing medical opinions, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight she assigns to the opinion.[29] The opinions of physicians who have treated a patient over a long period are given greater weight than reports of physicians employed and paid by the government for purposes of defending against a disability claim.[30] An ALJ need not "apply expressly each of the six relevant factors in

---

[26] 20 C.F.R. § 404.1545.

[27] *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *see also Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir.2004) (stating that we may not "displace the agency's choice between two fairly conflicting views").

[28] *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted).

[29] *See Watkins v. Barnhart*, 350 F.3d 1297, 131 (10th Cir. 2003).

[30] *See Broadbent v. Harris*, 698 F.2d 407, 412 (10h Cir. 1983).

deciding what weight to give a medical opinion"[31]  Rather the ALJ need only provide "good

reasons in his decision for the weight he gave treating sources' opinions."[32]

Here the ALJ weighed the medical opinion evidence as follows.  Dr. Karl Kale's,

Plaintiff's treating physician's, opinion was given little weight.  Dr. Kale opined Plaintiff could

not work.  In rejecting that opinion and giving little weight to Dr. Kale's opinion, the ALJ noted

the inconsistencies in treatment notes and inconsistencies with the record as a whole.

Specifically, the ALJ pointed to evidence indicating Plaintiff's bladder "was significantly better

since treatment" and Plaintiff's own reports that the medication was effective, her moods had

improved and she had better sleep.[33]

The State agency medical consultants, Dr. Fernandez and Dr. Schofield, both opined that

Plaintiff had functional abilities consistent with a range of light work.[34]  The ALJ gave great

weight to these opinions because they were supported by the record.  In support for the weight

assigned, the ALJ noted specific reports from the record, rehabilitation notes and examination

notes.

The court finds the ALJ provided good reasons for the weight he assigned to the medical

opinions in the record.  Thus there was no error as alleged by Plaintiff.  During oral argument the

court expressed some concern that there was no evaluation of Dr. Stockdale's records.  Dr.

Stockdale is Ms. W's leading urologist who provided care including the DMSO treatments.  A

---

[31] Oldham v Astrue 509 f.3d 1254, 1258 (10th Cir. 2007) (" We have set forth these factors as (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."); *see also  Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

[32] *Id.*

[33] Tr. 33.

[34] Tr. 223-25, 232-33.

close review of the record indicates that Dr. Stockdale did not expressly make an opinion as to

Plaintiff's abilities to work or her functional capacity. Thus, there was no need to assign a

weight to Dr. Stockdale's opinions.[35] The ALJ noted Dr. Stockdale's involvement with Ms. W's

treatment history and that is sufficient for purposes of the regulations and case law.

## CONCLUSION AND ORDER

Because the correct legal standards were applied and the ALJ's factual findings are

supported by substantial evidence in the record, the court AFFIRMS the decision of the

Commissioner.[36] The Clerk of Court is directed to close this case.

DATED this 18 June 2018.

Brooke C. Wells
United States Magistrate Judge

---

[35] *See e.g., Mounts v. Astrue*, 479 F. App'x 860, 866, 2012 WL 1609056, at *6 (10th Cir. 2012) (noting that there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision").

[36] *See Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003); *Doyal*, 331 F.3d at 760; *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).